# Lenheim *v.* Smith, Appellant.

*Equity—Reformation of deed—Intervening rights—Innocent purchaser without notice—Evidence.*

1. To successfully invoke the power of a court of equity to reform a deed, the plaintiff must be prepared to show by evidence that is clear and satisfactory, not only that the instrument, as it exists, does not represent the agreement actually entered into, but also that the particular reformation sought will bring it into harmony with what was intended to be done by the contracting parties; and such relief will always be denied where the rights of innocent third parties have intervened.

2. Where the grantors in a deed include a small wedge-shaped lot, which it was the intention of both parties should be reserved in the grantors, and subsequently the grantee conveys to an innocent third person without notice all of the land conveyed to him including the wedge-shaped lot, and such innocent purchaser gives a purchase money mortgage to the grantee, the deed cannot be reformed either as to the grantee or the innocent purchaser, although the mortgage is in the hands of the grantee and is still unpaid, if there is no evidence to show how much the value of the whole tract bought by the innocent purchaser would be affected by the loss of the title to the wedge-shaped lot.

Argued April 15, 1913. Appeal, No. 165, April T., 1913, by defendant, from decree of C. P. Crawford Co., Sept. T., 1911, No. 3, on bill in equity in case of Florence W. Lenheim and L. H. Lenheim v. Ernest R. Smith et al., Committee of Rose Minium. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Bill in equity to reform a deed.

PRATHER, P. J., found the following facts:

1. Plaintiffs were the owners of a certain tract of land, situate in the township of West Mead, containing 61.1 acres.

2. While so seized, they entered into a contract to sell the same to Ernest R. Smith, reserving therefrom a

certain piece of land in the form of a quadrilateral, fronting on the State road 400 feet, and extending along a driveway in a southerly direction, along the east side of the part so reserved 415 feet to a stone; thence in a westerly direction parallel to said State road to a point in the line of the Leon D. Edson property produced in a southwesterly direction until the said two lines meet.

3. Said contract of sale in writing referred to the aforesaid reserved or excepted piece of ground as follows: "Reserving therefrom that certain piece fronting four hundred feet on the State road and extending southeast along the driveway four hundred and fifteen feet."

4. Prior to the making and execution of a deed of conveyance of said land to the said Ernest R. Smith, the said L. H. Lenheim, acting for his wife, who was the owner of said land, met with the said Smith upon the premises, located and agreed upon the stone as the point in the driveway 415 feet from the public highway; from whence the line was extended in a westerly direction to the point in the Edson line produced as aforesaid.

5. Some time thereafter plaintiffs and defendants met at the office of Myron Park Davis, Esquire, and the plaintiffs executed and delivered to the defendant Smith, their deed for certain of the land above described. The deed contained the following reservation:

"Excepting and reserving therefrom that certain piece of the above described land, fronting four hundred feet on the State road, and extending southeast along the driveway four hundred and fifteen feet; thence parallel with the State road four hundred feet; thence to a point at the beginning of the survey on the State road four hundred and fifteen feet."

6. Thereafter, to-wit: on July 12, 1906, the plaintiffs made conveyance by deed of general warranty to H. H. Finney and Leon D. Edson, of the balance of said tract of land, the part they understood they had reserved and excepted from their conveyance to the said Smith, describing said conveyance to Finney and Edson as a

piece of land beginning at the Edson line and fronting 450 feet on the State road, and extending in a southerly direction along said driveway 415 feet to a stone; thence in a westerly direction parallel to said State road to a point meeting the Edson line produced in a southwesterly direction, and from said point along said line produced to the Edson line to the said State road to the place of beginning.

7. On May 19, 1910, said Ernest R. Smith conveyed the land described in the deed from the Lenheims to him, to Otis W. Friedah and Merl Friedah, two of the defendants, adopting the same description and reservation in his deed contained, and accepted as consideration therefor a mortgage of the said defendants, Otis W. Friedah and wife, dated May 19, 1910, recorded in Mortgage Book 79, page 25, upon the premises conveyed, for $2,860, the first payment of which, $360, becomes due November 19, 1913, and the last payment of $500, November 19, 1918.

8. On the same day the defendants, Otis W. Friedah and wife, placed another mortgage upon said land payable to W. P. Benner, committee of Rose Minium, to secure the payment of $1,500 in five years from date.

9. Said H. H. Finney has succeeded to the interest of Leon D. Edson in the land reserved as aforesaid, and is now the owner of the piece of land in dispute, and is now demanding and has demanded from the said plaintiffs possession of all the land described in their deed as aforesaid to H. H. Finney and Leon D. Edson.

10. That prior to the conveyance of said land by Ernest R. Smith to the said Otis W. and Merl Friedah, his wife, he had notice that the Lenheims, and Leon D. Edson and H. H. Finney, their grantees, were alleging that the description in the said Smith's deed of the land reserved in the grantors was a mistake.

11. In 1909, about the time that the said Friedahs had entered into an article of agreement with the said

150      LENHEIM *v.* SMITH, Appellant.

Statement of Facts—Opinion of the Court.      [54 Pa. Superior Ct.

Smith to purchase from him the land conveyed to him by the said Lenheim, and the year preceding the conveyance by Smith of said land to the said Friedahs, L. H. Lenheim and H. H. Finney on several occasions met the said Otis Friedah upon the premises and informed him there was a dispute about the land now in controversy, the said Finney alleging that the reservation in the Smith deed reserved in the grantors, the Lenheims, all of the land described in the Finney and Edson deed of conveyance aforesaid, from the said Lenheim.

12. It was the intention of the Lenheims and Ernest R. Smith, their grantee, that the land reserved in the said grantors should include all of the land embraced and described in the deed of said Lenheim and wife to the said Finney and Edson, and the description of said reserved land contained in the deed of Lenheim and wife to the said Ernest R. Smith did not express the mutual intention and understanding and agreement of the parties.

The court entered a decree reforming the deed in accordance with the prayer of the bill.

*Error assigned* was the decree of the court.

*Otto Kohler,* for appellant.

*Frank J. Thomas,* with him *Leon D. Edson* and *John O. McClintock,* for appellees.

OPINION BY HEAD, J., July 16, 1913:

The power of a court of equity to reform a deed or other instrument on the ground that by mutual mistake it failed to evidence the actual agreement of the parties is undoubted. It is a delicate power, however, to be cautiously exercised. To successfully invoke it, a plaintiff must be prepared to show by evidence that is clear and satisfactory not only that the instrument, as it exists,

does not represent the agreement actually entered into but also that the particular reformation sought will bring it into harmony with what was intended to be done by the contracting parties. And it must be apparent that in such case a plaintiff may not with safety sleep on his rights and that such relief will always be denied where the rights of innocent third parties have intervened. In such a case the equity of the plaintiff, however strong against the original contracting party, is but a secret equity as against all others without notice, and will never be enforced against an innocent subsequent purchaser for value. These principles are so elementary they need no citation of authorities to support them.

In October, 1905, the present plaintiffs sold and conveyed to one Smith a considerable tract of land of which they were then the owners. The deed was preceded by a written agreement. From both of these instruments and from all of the testimony as well it clearly appears that the plaintiffs did not intend to sell nor their grantee to buy all of the tract then owned by the former. A small portion thereof was to be reserved and the title to it was to remain in the grantors. In the preliminary agreement but two lines of the proposed reservation were mentioned. The agreement in this respect was not self-explanatory. The southern and western boundaries of the portion to be reserved and the length of each of these two lines were stated in the agreement. But whether the reservation was to be triangular, quadrilateral, or of irregular shape, could not be determined from an inspection of the agreement alone.

When the parties shortly thereafter came to make their deed, this apparent defect was cured and the description of the reservation was completed by adding two additional lines necessary to make a quadrilateral, the south and east lines of which were parallel and of equal length with the two mentioned in the preliminary agreement. In July, 1906, the plaintiffs undertook to convey to Finney & Edson the small piece reserved in their previous

conveyance to Smith of the larger tract. Whether or
not in making this conveyance they compared the descrip-
tion with that of the actual reservation in the former deed
does not appear, but it is clear that they embraced in it
a small wedge-shaped piece of ground not within the
described lines of the original reservation, and that the
record title to that small piece had consequently passed
by the former deed to Smith. Thus the situation re-
mained until in May, 1910, Smith sold and conveyed
to one Friedah and his wife all of the land that had been
conveyed by the plaintiffs to Smith, including the small
piece, the subject of this dispute.

In July, 1911, the present bill was filed by the plain-
tiffs praying for a reformation of the deed from them-
selves to Smith and from the latter to Friedah, on the
ground that a mistake had been made in the description
of the reservation in the original deed, and that it did
not therefore truly set forth the description that had
been agreed on by the parties and thus failed to effectuate
their mutual intent and purpose. The bill necessarily
averred that Friedah, the subsequent purchaser and then
owner, had notice before he bought of the mutual mistake
referred to. The answer was fully responsive in denial
of this averment.

Upon the hearing it appeared that when Friedah took
title from Smith he gave a purchase money mortgage to
secure a portion of the price of the land, which mortgage
was still unpaid. It further appeared that Friedah had
executed and delivered a second mortgage to one Benner,
a committee of another person, to secure the repayment
of money borrowed. It may here be stated that this
committee filed no answer, and as to him a degree was
entered pro confesso. The plaintiffs were unable to aver
in their bill that this committee, when he took his mort-
gage, had any notice of the mistake referred to, and we
are not advised what proof, if any, on that subject pre-
ceded the entry of the decree pro confesso against him.
As no appeal, however, was taken by him from that decree,

we are not required to express any opinion as to the effect of such decree upon his cestui que trust.

The learned court below further declares, in his opinion, "We may briefly consider the question of notice of this mistaken description to the defendants Friedah prior to their purchase of said land. We think the evidence fails to show that they or either of them had notice prior to the filing of this bill, that the Lenheims or their grantees of the part reserved or intended to be reserved, were claiming that the deed of Lenheims to Smith did not correctly describe the land conveyed and the land reserved out of said conveyance." We are satisfied from an examination of the evidence that this conclusion of the learned court below was fully warranted. At first blush it would seem as if such conclusion were in contradiction of the tenth finding of fact made by the learned judge, but when that finding is interpreted in the light of the opinion following the portion just quoted, it is clear that what was meant in the finding was that the defendants Friedah had learned that the grantees in the second deed from the plaintiffs were setting up the claim that their deed, as made, carried the lines of the reservation to points that would include the disputed strip of ground. This was quite a different thing from proof of notice to the later purchasers that there was a mistake in the description of the reservation and that as a consequence if they bought from Smith they would not secure title to the disputed tract.

Notwithstanding the conclusion of the learned judge below that the defendants Friedah, at the time of their purchase, were not visited with notice of the alleged mistake, he entered a decree against them because they had not paid all of their purchase money and their mortgage was still in the hands of their vendor Smith, as against whom it was found the deed should be reformed. This conclusion of the learned judge was a non sequitur from the facts on which it was predicated. There was no evidence to show how much the value of the whole tract

purchased by Friedah would be affected by the loss of the title to the portion in dispute. If the decree as made were permitted to stand, the title to this portion of ground would be taken away from Friedah although he was an innocent purchaser for value. He would then be subjected to the expense, delay and uncertainty either of an action on the covenant of warranty contained in the deed of Smith to him, or to a defense pro tanto in an action by his mortgagee. The plaintiffs have shown no equity to justify them in seeking a decree against him which would be followed by such results. And if the plaintiffs may not have a decree against Friedahs, there is no reason why they should have one against Smith. His deed, as it was made and recorded, is in the line of the title of the innocent purchasers. To undertake to reform it now would accomplish nothing more than to put a cloud upon the title of the latter even when they have a decree in their favor.

For these reasons we think the learned court below fell into error.

Decree reversed and bill dismissed at the cost of the appellees.